IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SWILL BEVERAGES, LLC, : | | |
| *Plaintiff*, : | | CIVIL ACTION |
| : | | |
| v. : | | |
| : | | |
| UNITED STATES DISTILLED PRODS. : | | No. 15-5181 |
| CO., : | | |
| *Defendant*. : | | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                    DECEMBER 16, 2015

  Swill Beverages complains that United States Distilled Products impaired Swill's ability to break into the highly competitive vodka market when Distilled Products shipped leaky vodka bottles in the wrong packaging to Swill's customers and, in addition, informed Swill that Swill could no longer market that vodka as "gluten free." Distilled Products has moved to transfer this action to Minnesota, where it and its bottling facilities are located, and Swill, a Pennsylvania limited liability company, opposes that motion. The Court heard oral argument on the motion on December 9, 2015. For the reasons that follow, the Court will deny the motion.

**BACKGROUND**

  Swill is a fledgling vodka brand that contracted with Distilled Products to produce and bottle its vodka. Swill, a Pennsylvania limited liability company with one member who is also a Pennsylvania resident, alleges that Distilled Products, a Minnesota company, has produced leaking vodka bottles and delivered those substandard bottles in nonconforming boxes to Swill's customers. In addition, Swill had been advertising its vodka as "gluten free" based on assurances to that effect from Distilled Products, but recently learned from Distilled Products that the vodka may not be marketed as gluten free. Swill contends that all of these issues have

1

harmed its reputation with its customers and potential customers.[1] To add insult to injury, after Swill complained of all of these defects, Distilled Products told Swill that its production requirements were too small, and that it would no longer bottle Swill's product. Swill claims to have suffered over $400,000 in lost profits and consequential damages and alleges claims for breach of contract and breach of warranty.

Shortly after answering the Complaint, Distilled Products moved to transfer this action to the District of Minnesota pursuant to 28 U.S.C. § 1404(a), arguing that the District of Minnesota would be a more convenient forum.

**LEGAL STANDARD**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Once it is determined that a case could have been brought in the proposed transferee district, a court must weigh a variety of private and public factors to determine whether the matter should be transferred under 28 U.S.C. § 1404(a). The private factors include:

> [1 P]laintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)

---

[1] Those customers are located in several states, including Pennsylvania, to which 133 bottles (or about 11 cases) were shipped. All of the Pennsylvania purchases were shipped to locations within the Eastern District of Pennsylvania. According to an affidavit accompanying Swill's opposition to the motion to transfer, 56 cases of Swill's vodka were shipped to Carlstadt, New Jersey; 262 cases were shipped to Pleasantville, New Jersey, 17 cases were shipped to Mississippi, 28 cases were shipped to Texas, 14 cases were shipped to North Dakota, 14 cases were shipped to Minnesota, and 15 cases were shipped to Indiana. It is unclear from the Complaint which of Swill's customers received leaking bottles and/or nonconforming packaging, and which of Swill's customers was upset by the change in "gluten free" marketing.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted). The public factors include:

> [1 T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted). The movant carries the heavy burden of establishing the need for transfer, as the plaintiff's choice of venue "should not be lightly disturbed." *Id.* at 879.

**DISCUSSION**

U.S. Distilled Products argues that this matter should be transferred to the District of Minnesota. No one argues that the District of Minnesota would not be a proper venue. Thus, the Court moves to the consideration of the private and public *Jumara* factors.

Distilled Products argues first that Swill's choice of forum is entitled to little deference because the operative facts occurred elsewhere. It cites a number of cases that support the proposition that "where none of the operative facts of the action occurred in the plaintiff's chosen forum, the choice is afforded less weight." *See Hillard v. Guidant Corp.*, 76 F. Supp. 2d 566, 569 (M.D. Pa. 1999); *see also, e.g., Zeevi v. Am. Home Prods. Corp.*, No. 99-20277, 2002 WL 92902, at *1 (E.D. Pa. 2002); *Cameili v. WNEP-16 the News Station*, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001); *Toll Bros. v. Nationwide Prop. & Cas. Ins. Co.*, No. 05-1191, 2005 WL 2600207, at *3 (E.D. Pa. Oct. 13, 2005); *Fitzgerald v. Central Gulf S.S. Corp.*, 292 F. Supp. 847, 849 (E.D. Pa. 1968).

The cases cited by Distilled Products are easily distinguishable, however. In *Hillard*, the *plaintiffs* decided that they no longer wanted to litigate in the forum they initially chose and sought transfer of the case to a district in which no operative events occurred. *Hillard*, 76 F.

Supp. 2d at 569-70.  In *Zeevi*, *Cameli*, and *Fitzgerald*, not only did none of the operative events occur in the transferor district, but the plaintiffs themselves resided in the transferee district. *Zeevi*, 2002 WL 92902, at *2; *Cameli*, 134 F. Supp. 2d at 405-406; *Fitzgerald*, 292 F. Supp. at 849.  In *Toll Bros.*, the case involved real estate located in the transferee district, an underlying lawsuit filed in the same state as the transferee district, and no operative facts in this District. *Toll Bros.*, 2005 WL 2600207, at *3.  In this case, Swill does reside here in this District. Moreover, not all of the operative facts took place in the proposed transferee district, and some events arguably occurred in this District.  Although the parties agreed at oral argument that any contract was entered into in Minnesota and that all of the bottling and packaging occurred there, the product in question was shipped to several locations, including to locations in this District. Swill contends that the leaking bottles – key evidence in this case – remain in the locations to which they were shipped, and that the customers who received these shipments are witnesses on both liability and damages.  For these reasons, the Court will not so easily discount Swill's choice of forum.

     As to the other private factors, Distilled Products' preference for a Minnesota forum does weigh slightly in favor of transfer.  Also weighing in favor of transfer is a consideration of where the claim first arose, which the parties agree was Minnesota.  *See Myers v. Jani-King of Philadelphia, Inc.*, No. CIV.A. 09-1738, 2012 WL 6058146, at *4 (E.D. Pa. Dec. 5, 2012) ("In determining whether venue is proper in a breach of contract case, the place of performance is typically where the claim arose."); *see also* 12/9/15 Oral Argument Tr., at 15:16-16:1 (Plaintiff's counsel admitting that the claim arose in Minnesota, while arguing that evidence is located in many other jurisdictions).  However, a consideration of the physical and financial burdens weighs in favor of Swill.  As a one-man operation reportedly struggling to launch a new product,

4

the financial burden of pursuing a lawsuit far from home would be much more difficult for Swill to bear, as compared to the burden on Distilled Products, an established company, of defending a lawsuit here.

The remaining private factors are largely non-determinative. Although Distilled Products argues that many liability witnesses are located in Minnesota, those witnesses are by and large the employees of Distilled Products. "[P]arty witnesses are presumed to be willing to testify in either forum despite any inconvenience. The convenience of non-party witnesses is the main focus." *Hillard,* 76 F. Supp. 2d at 570. The location of Distilled Products' employees, then, is not an important consideration when weighing this factor. The non-party witnesses in this case are located in both Pennsylvania and Minnesota, as well as in a number of other states.[2] As for books and records, the documents related to the case could be transported, and while the bottling plant cannot, neither could the parties present the plant itself at trial in either venue, so its location is not an important factor in considering transfer.

As to the public factors, Distilled Products concedes that judgment enforceability and public policy interests are neutral factors. It argues that the District of Minnesota is less congested than this district, citing caseload statistics that show that fewer cases are filed in that district than are filed in this District and that a smaller percentage of civil cases go to trial in that district than in this District. Those statistics, however, give the Court very limited insight on important potential "congestion" considerations, such as how many cases are pending in each district *per judge* or how long, on average, cases of this type remain pending. The cited statistics do nothing to advance Distilled Products' argument.

---

[2] The Court observes that a substantial amount of Swill's sales were to customers in New Jersey, some of whom may be within subpoena range of this Court.

5

Distilled Products also contends that because any allegedly bad actions must have taken place in Minnesota, Minnesota law will govern, and therefore Minnesota has a greater interest in deciding the controversy.[3] Swill counters that because it is a Pennsylvania resident and because some of its product was sold to the Pennsylvania Liquor Control Board, Pennsylvania has at least an equal interest in this case, if not a greater interest. The Court finds that both jurisdictions have at least some interest in this particular dispute, such that this factor does not weigh heavily one way or the other.

As to the final public factor, Distilled Products argues that a judge in the District of Minnesota will have greater familiarity with Minnesota law, tipping this factor in its favor. This case, however, is a breach of contract case, and whether Minnesota or Pennsylvania law applies, it does not appear that any particularly challenging or unique legal issues will arise, and at oral argument, Distilled Products conceded as much. *See* 12/9/15 Oral Argument Tr., at 5:19-22. Therefore, this final factor does not weigh strongly in favor of transfer, even if Minnesota law does apply to this action.

Overall, some factors do weigh in favor of transfer, including Defendant's preference, where the claim arose, and the potential application of Minnesota law. However, those factors, even in combination, are not substantial enough to overcome the deference due to Swill's choice of venue, especially given the relative financial positions of the two companies. Thus, the Court will not transfer this action to the District of Minnesota.

---

[3] The Court notes that neither party engaged in a meaningful choice of law analysis. Because the result here would be the same whether Minnesota or Pennsylvania law applies, the Court will not undertake its own analysis at this time.

**CONCLUSION**

      For the foregoing reasons, the Court will deny Distilled Products' motion. An appropriate order follows.

                                                    BY THE COURT:

                                                    <u>S/Gene E.K. Pratter</u>
                                                    GENE E.K. PRATTER
                                                    United States District Judge